**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

YOUTH OPPORTUNITIES OF
AMERICA, INC., et al.,

      Plaintiffs,

vs.                                                                  Case No. 3:15-cv-449-J-39PDB

CITY OF JACKSONVILLE,

      Defendant.

_____

## ORDER

    **THIS CAUSE** is before the Court on Plaintiffs' Motion for Preliminary Injunction,

filed on April 9, 2015.  (Doc. 2; Motion).  Pursuant to the Court's Order (Doc. 5; 04/09/15),

Defendant City of Jacksonville ("City") filed a Response in Opposition to the Motion on

April 22, 2015.  (Doc. 11; Response).  Plaintiffs filed a reply memorandum on April 29,

2015.  (Doc. 12; Reply).  The Court heard argument of counsel at a hearing on the

Motion, held on May 1, 2015.  (Doc. 13; Clerk's Minutes).

## I.    Factual Background

    Plaintiffs challenge the constitutionality of Section 250.707, City of Jacksonville,

Florida, Ordinance Code, which provides:

> (a)    It shall be unlawful for any person under the age of 14 to engage in residential peddling or solicitation.

> (b)    It shall be unlawful for any person under the age of 18 to engage in residential peddling or solicitation without direct supervision by a person at least 18 years of age. Direct supervision means the supervising person shall at all times have the minor in sight and shall in no event be more than 100 feet away from the minor.

Code § 250.707, City of Jacksonville, Florida, Ordinance Code ("Ordinance").  The

Ordinance Code defines "Soliciting" to include:

> (1)  Seeking to obtain orders for the purchase of goods,
> wares, merchandise, foodstuffs, services of any kind,
> character or description whatever, for any kind of
> consideration whatever; or
>
>                                    . . .
>
> (3)  Seeking to obtain subscriptions to books, magazines,
> periodicals, and every other kind of publication; or
>
> (4)  Seeking to obtain gifts or contributions of money,
> clothing or any other valuable thing for the support or benefit
> of any charitable or nonprofit association, organization,
> corporation, or project or for any other purpose.

Jacksonville Ordinance Code § 250.701(a).  "Peddling" is defined to "mean selling or

attempting to sell merchandise or services or both while carrying such merchandise or the

materials necessary to provide services."  Id. § 250.101(i).  In their Motion, Plaintiffs

request the Court to preliminarily enjoin the City from enforcing Section 250.707(b).  See

Motion at 1.[1]

Plaintiff Stephen Charles Boykins ("Boykins"), is the founder and director of

Plaintiff Youth Opportunities of America, Inc. ("YOA"), which he describes as a "not for

profit corporation" in existence since 2014, with its principal place of business in

Jacksonville, Florida.[2]  (Doc. 3; Boykins Affidavit ("Aff.") ¶¶ 3, 4).  YOA is associated with

the  Bibleway Full Gospel Christian Fellowship, of which Boykins is the pastor.  Id. ¶ 5.

---

[1]  Plaintiffs state in their Reply that "[t]here are no current YOA [Youth Opportunities of America, Inc.] members under the age of 14 nor does YOA accept such members."  Reply at 1.  As such, Plaintiffs do not challenge subsection (a) of the Ordinance.

[2]  Boykins states that prior to the creation of YOA, he founded an organization called Teens Against Drugs and Alcohol, Inc., the "predecessor to YOA, which had been in business since 1992." Boykins Aff. ¶ 4.

According to Boykins,

> 6.     The purpose of YOA is to provide educational and social opportunities for at-risk youths in socially and economically disadvantaged areas.  Through the auspices of YOA, teenagers who live in areas with gang and drug activity are offered an opportunity to engage in constructive activities and learn how to function in the world of business.
>
> 7.     YOA has a unique method of providing these opportunities to at-risk youth.  Members of YOA go door-to-door, under [Boykins'] supervision, in more affluent neighborhoods, where the composition is mostly white, and explain their mission and sell candy and small items to raise money for the activities of YOA.
>
> 8.     The members can earn credit that can be redeemed to participate in field trips conducted by YOA or for merchandise.
> . . . .
>                                        . . .
>
> 11.     The members of YOA participate in the sales of items only with the specific written consent of their parents or guardians.

Id. ¶¶ 6-8, 11.

Boykins states that he has been "stopped on numerous occasions by law enforcement officers while out with the children."  Boykins Aff. ¶ 13.  He cites to three instances in 2014 when he was stopped by law enforcement officers and told he was operating illegally and asked to leave the area.  Id.  On June 6, 2014, Boykins was charged with contributing to the delinquency of a minor, contrary to the provisions of Section 827.04(1)(a), Florida Statutes, and with residential soliciting or peddling, in violation of Chapter 250 of the City of Jacksonville Ordinance Code.  Id. ¶ 14.  The charges brought pursuant to Chapter 250 of the Ordinance Code were dismissed.  Id. Boykins states that "[t]he effect of the Ordinance being used to charge me with

3

contributing to the delinquency of a minor, will be to deprive members of YOA the benefits of membership in YOA, in that they will be unable to raise money in the city of Jacksonville where they have sold items prior to the date of this ordinance."  Id. ¶ 15.

The City has filed no evidence for the Court's consideration.

## II.    The Complaint

The action is brought by six Plaintiffs: (1) YOA; (2) Boykins; (3) B.A.P., individually and as Next Friend of B.P. and K.P.; (4) S.C., individually and as Next Friend of D.B.; (5) P.S.; individually and as Next Friend of D.S.; and (6) C.W.; individually and as Next Friend of J.H.  Complaint at 1.  The Complaint lists the following minors: B.P., age ten (10) years old and "a prospective member of YOA"; K.P., age fifteen (15) years old and "a prospective member of YOA"; D.B., age ten (10) years old, and "a prospective member of YOA"; D.S., age seventeen (17) years old and "a former member of YOA"; and J.H., age sixteen (16) years old, and "a current member of YOA."  Id. ¶¶ 6, 7, 9, 11, 13.  All of the minors are African-American.  Id.  The adult Plaintiffs, B.A.P., S.C., P.S., and C.W., are all African-American, and are residents of Duval County or Clay County, Florida.  They are the parents of the minors identified in the Complaint.  Id. ¶¶ 8, 10, 12, 14.

Plaintiffs bring three claims.  In Count I of the Complaint, titled "Freedom of Speech (42 U.S.C. § 1983)," Plaintiffs allege that the minors' door-to-door solicitation and advocacy activities on behalf of YOA are undertaken "in company with a responsible adult, and with the permission of their parents."  Complaint ¶ 42.  Plaintiffs allege that "[t]he Ordinance infringes upon the First Amendment rights of the members because it burdens and prevents them from advocacy of the interests of YOA," and "because it burdens and prevents them from raising money on behalf of YOA."  Id. ¶¶ 43, 44.  Thus,

4

according to Plaintiffs, the Ordinance "violates the fundamental rights to speech and expression that are protected by the First Amendment." Id. ¶ 45. The Complaint does not identify which Plaintiffs bring Count I.

In Count II, titled "Substantive Due Process (42 U.S.C. § 1983)," Plaintiffs allege that "[t]he Ordinance violates Plaintiffs' freedom of association, and deprives the parent Plaintiffs of their fundamental right to raise their children" without governmental interference, "because it prevents them from giving their children permission to participate in YOA fundraising with Pastor Boykins." Complaint ¶¶ 48, 50. Additionally, Plaintiffs allege that "[t]he Ordinance infringes upon the right to association of the member Plaintiffs because it forbids them from soliciting funds and advocacy in the company of their fellow members," id. ¶ 49, and infringes on the rights of YOA members "because it threatens them with prosecution for the exercise of the above enumerated rights." Id. ¶ 51. Plaintiffs allege that the City "lacks a compelling state interest for infringing on Plaintiffs' fundamental rights." Id. ¶ 52. The Complaint does not identify specifically which Plaintiffs assert the substantive due process claim.

In Count III, titled "Equal Protection (42 U.S.C. § 1983)," Plaintiffs allege that the Ordinance violates Plaintiffs' "fundamental liberties that are protected by the Equal Protection Clause," including "freedom of association," and the parents' "fundamental right to raise their children without unwarranted outside interference." Complaint ¶¶ 56, 57. Additionally, Plaintiffs allege that the Ordinance treats "Plaintiffs differently than other similarly situated groups, on the basis of their race." Complaint ¶¶ 59. Plaintiffs allege that the City "lacks a compelling state interest for their disparate treatment of Plaintiffs." Id. ¶ 58. Plaintiffs do not identify which of the Plaintiffs is asserting the Court III Equal

Protection claim.

As to each claim, Plaintiffs seek a judgment declaring Section 250.707 of the Jacksonville Ordinance Code unconstitutional, a preliminary and permanent injunction, an award of monetary damages, and an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## III.   Motion for Preliminary Injunction: Standard of Review

The Court is authorized to enter a preliminary injunction by Rule 65, Federal Rules of Civil Procedure. To prevail on their request for injunctive relief, Plaintiffs must demonstrate: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1246-47 (11th Cir. 2002). A preliminary injunction is a drastic and extraordinary remedy which should not be granted unless the movant can clearly establish each of the four elements. America's Health Ins. Plans v. Hudgens, 742 F.3d 1319, 1329 (11th Cir. 2014). "The burden of persuasion on all of the four requirements is at all times upon the plaintiff." Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974).[3] The failure to establish an element, such as a substantial likelihood of success on the merits, will warrant denial of the request for preliminary injunctive relief and obviate the need to

---

[3] In Bonner v. City of Prichard, Alabama, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

6

consider the remaining prerequisites.  See Pittman v. Cole, 267 F.3d 1269, 1292 (11th Cir. 2001) (citing Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994)); Del Monte Fresh Produce Co. v. Dole Food Co., 148 F. Supp. 2d 1326, 1339 n.7 (S.D. Fla. 2001).  In considering a motion for preliminary injunctive relief, "a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding."  Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995) (internal quotation marks and citation omitted).

"[P]reliminary injunctions of legislative enactments - because they interfere with the democratic process and lack the safeguards against abuse or error that come with a full trial on the merits - must be granted reluctantly and only upon a clear showing that the injunction before trial is definitely demanded by the Constitution and by the other strict legal and equitable principles that restrain courts."  Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285, 1286 (11th Cir. 1990) (reversing district court's entry of preliminary injunction of city ordinance specifying percentage of construction work to be set aside for minority contractors because the "district court should have developed a more complete record," and "the present record is inadequate . . . to warrant the extraordinary remedy of preliminary injunction").

A plaintiff seeking a preliminary injunction must "'make some prima facie showing'" of entitlement to preliminary injunctive relief before the burden shifts to the party opposing the preliminary injunction.  LSSi Data Corp. v. Comcast Phone, LLC, 696 F.3d 1114, 1123 (11th Cir. 2012) (quoting CBS Broad., Inc. v. EchoStar Comm. Corp., 265 F.3d 1193, 1202 (11th Cir. 2001)).  The Eleventh Circuit advises that "[t]o demonstrate the

significance of its interest, the City is not required to present detailed evidence ...,[but] is

entitled to advance its interests by arguments based on appeals to common sense and

logic." Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301,

1318 (11th Cir. 2000) (quotation marks and citation omitted).[4]

## IV.    Discussion[5]

---

[4] E.g. Int'l Caucus of Labor Comm. v. City of Montgomery, 111 F.3d 1548, 1551 (11th Cir. 1997) ("To demonstrate the significance of its interest [in policy banning tables from city sidewalks], the City is not required to present detailed evidence of pedestrian or traffic flow on or around specific sidewalks; the City is 'entitled to advance its interests by arguments based on appeals to common sense and logic.'" (citation omitted).); Occupy Fort Myers v. City of Fort Myers, 882 F. Supp. 2d 1320, 1330 (M.D. Fla. 2011) (City may rely upon common sense and logic in presenting its interest in a time place and manner preliminary injunction analysis of ordinance restricting speech in public park); One World One Family Now v. City of Key West, 152 F. Supp. 2d 1352, 1356 (S.D. Fla. 2001) (City was not required to present detailed evidence of pedestrian or traffic flow on or around specific sidewalks, in action brought by nonprofit organization to preliminarily enjoin city from enforcing ordinance that prohibited use of portable tables to sell literature or message-bearing t-shirts on public sidewalks; city was entitled to advance its interests by arguments based on appeals to common sense and logic (time place and manner restriction on public forum)).

[5] Standing is one of the Article III case or controversy requirements, and must therefore be established "as a threshold matter." I.L. v. Alabama, 739 F.3d 1273, 1278 (11th Cir.), cert. denied, 135 S.Ct. 53 (2014). To have standing, the plaintiffs must demonstrate injury in fact, causation, and redressability. Id. "Failure to satisfy any of these three requirements is fatal." Id. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). Redressability is "a substantial likelihood that the relief requested will redress the injury claimed." Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 75 n. 20 (1978) (internal quotation marks omitted).

"Where the plaintiff seeks declaratory or injunctive relief, as opposed to damages for injuries already suffered, for example, the injury-in-fact requirement insists that a plaintiff "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Strickland v. Alexander, 772 F.3d 876, 883 (11th Cir. 2014) (quoting Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th Cir.1999)). "This is because injunctions regulate future conduct only; they do not provide relief for past injuries already incurred and over with." Id. (citing Church, 30 F.3d at 1337). A plaintiff seeking declaratory or injunctive relief must allege and ultimately prove "'a real and immediate—as opposed to a merely hypothetical or conjectural—threat of future injury.'" Id. (quoting Church, 30 F.3d at 1337). However, "a plaintiff with the exercise of a constitutional right at stake may seek declaratory or injunctive relief prior to the challenged statute's enforcement." GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1251-52 (11th Cir. 2012) (citing Ex Parte Young, 209 U.S. 123, 150–51 (1908) (concluding that state officials may be enjoined by a federal court of equity and that a federal court may, in appropriate circumstances, enjoin future state criminal prosecutions if the state officials threaten to enforce an unconstitutional statute)).

An organizational plaintiff has standing to enforce the rights of its members "'when its members

(continued...)

## A.   Facial Versus As-Applied Challenge

Though their Motion does not specify, Plaintiffs contend in their Reply that they are

bringing both a facial and an as-applied challenge to Section 250.707(b). Rely at 1. "'A

facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a

statute or regulation itself.'" Am. Fed'n of State, Cnty, and Mun. Emp. v. Scott, 717 F.3d

851, 863 (11th Cir. 2013) (citation omitted), cert. denied, 134 S.Ct. 1877 (2014).

> "[W]hen a plaintiff mounts a facial challenge to a statute or
> regulation, the plaintiff bears the burden of proving that the law
> could never be applied in a constitutional manner." . . . Put
> another way, "the challenger must establish that no set of
> circumstances exists under which the Act would be valid."

Id. (citations omitted). "As a general matter, courts strongly disfavor facial challenges."

Scott, 717 F.3d at 864.

> "Claims of facial invalidity often rest on speculation. As a
> consequence, they raise the risk of premature interpretation of
> statutes on the basis of factually barebones records. Facial
> challenges also run contrary to the fundamental principle of
> judicial restraint that courts should neither anticipate a
> question of constitutional law in advance of the necessity of
> deciding it nor formulate a rule of constitutional law broader
> than is required by the precise facts to which it is to be
> applied. Finally, facial challenges threaten to short circuit the
> democratic process by preventing laws embodying the will of
> the people from being implemented in a manner consistent

---

[5](...continued)

would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1342 (11th Cir. 2014) (quoting Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc., 528 U.S. 167, 181 (2000)). "[O]rganizational plaintiffs need only establish that 'at least one member faces a realistic danger' of suffering an injury." Id. (quoting Fla. State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1163 (11th Cir. 2008)); see e.g., Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist., 647 F.3d 1296, 1302 n.4 (11th Cir. 2011).

It is clear that Plaintiffs YOA; Pastor Boykins; current YOA member J.H.; and C.W., who is J.H.'s parent, see Complaint ¶¶ 13,14, each have standing to bring one or more of Plaintiffs' three claims.

with the Constitution."

Id. (quoting Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450-51 (2008)(citations and internal quotation marks omitted)). Generally, "to challenge a statute facially, 'the challenger must establish that no set of circumstances exists under which the Act would be valid.'" Fla. Ass'n of Prof'l Lobbyists, Inc. v. Div. of Legislative Info. Servs. of the Fla. Office of Legislative Servs., 525 F.3d 1073, 1079 n.7 (11th Cr. 2008) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)). "Unless the statute is unconstitutional in all its applications, an as-applied challenge must be used to attack its constitutionality." Williams v. Pryor, 240 F.3d 944, 953 (11th Cir. 2001).

Where plaintiffs challenge the validity of a statute because they seek to vindicate their own rights, the challenge is "as-applied." DA Mortgage, Inc. v. City of Miami Beach, 486 F.3d 1254, 1262 (11th Cir. 2007). "An as-applied challenge . . . addresses whether 'a statute is unconstitutional on the facts of a particular case or to a particular party.' . . . Because such a challenge asserts that a statute cannot be constitutionally applied in particular circumstances, it necessarily requires the development of a factual record for the court to consider." Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009) (citation omitted). The distinction between a facial challenge and an as-applied challenge "'goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint.'" Scott, 717 F.3d at 863 (quoting Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 331 (2010)).

## B. Count I: First Amendment Freedom of Speech[6]

---

[6] Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must plead facts plausibly establishing that she was "deprived of a right secured by the
(continued...)

10

As to Count I, Plaintiffs argue in their Motion that Section 250.707(b)

unconstitutionally infringes upon their commercial speech, in contravention of the

precepts set forth by the Supreme Court in Central Hudson Gas & Electric Corp. v. Public

Service Commission of New York, 447 U.S. 557, 562–63 (1980). Motion at 2-4.[7]

Plaintiffs argue that

> the ordinance fails the Central Hudson test because it does
> not directly advance any substantial government interest and
> also fails to use the least restrictive alterative. The ordinance
> essentially makes it illegal for a child to engage in door-to-door
> sales for a nonprofit organization without an adult being within
> 100 feet of the child. There is no evidence that the ordinance
> advances any legitimate government interest. Also, less
> restrictive alternatives exist to the overly restrictive line-of-sight
> regulation including such measures as pairing children
> together, requiring an adult to be responsible for no more than
> 10 children, and using GPS and mobile phones to keep track
> of the children.

Motion at 4.

The City responds that the Ordinance is content neutral and applies only to

commercial activities, existing "for the common-sense protection of children in the City of

Jacksonville." Response at 1-2. The City argues that Plaintiffs have failed to establish

---

[6](...continued)
Constitution or laws of the United States and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

[7]   Accord Project 80's, Inc. v. City of Pocatello, 942 F.2d 635, 637-39 (9th Cir. 1991) (holding that ordinances banning door-to-door solicitation violated the First Amendment under Central Hudson's commercial speech analysis, and time, place and manner analysis). Cf. New York Youth Club v. Town of Smithtown, 867 F. Supp. 2d 328 (E.D.N.Y. 2012) (Intermediate scrutiny was appropriate level of scrutiny to apply to § 1983 claim asserted by not–for–profit corporation with purpose of providing educational and social opportunities for at–risk youths, seeking damages and declaration that local ordinance requiring license for door–to–door solicitation of donations and prohibiting those under 16 years old from any such solicitation without being accompanied by parent or legal guardian violated First Amendment, where ordinance did not reflect any content preference, operated independently of what any particular canvasser or group chose to communicate to residents, and did not prohibit all soliciting and canvassing, but rather merely restricted manner and place of such speech).

11

any of the four requirements for sustaining a preliminary injunction. Id. at 4.  The City

responds:

> Common sense dictates that the City's interests in protecting
> young children from harm (by banning solicitation and
> peddling door-to-door), and in protecting slightly older children
> by requiring adult supervision, have been and continue to be
> advanced by the enforcement of Section 250.707.  In
> essence, the Ordinance is not only content-neutral, it does not
> deal with speech at all; it deals with adult supervision of
> children who wish to sell goods or seek donations.  There is
> absolutely no evidence to suggest that the City enacted the
> 22-year-old Ordinance for any purpose other than the long-
> recognized substantial interest in protecting the safety of its
> citizens, especially children.

Response at 8.  The City contends that Section 250.707 is a valid "time, place and

manner" restriction of commercial speech, which does not necessitate a determination of

whether the Ordinance is the least restrictive means to accomplish the government's

interest. Id. at 8-9.

In their Reply, Plaintiffs introduce a new argument, contending that the regulated

speech is "not purely commercial speech."  Rather, citing Riley v. National Federation of

the Blind of North Carolina, Inc., 487 U.S. 781, 796 (1988), Plaintiffs argue that "Plaintiffs'

commercial speech is 'inextricably intertwined with otherwise fully protected speech,' and

therefore more substantial constitutional scrutiny applies."  Reply at 2.

## 1.   Whether Plaintiffs have Demonstrated a Substantial Likelihood of Success

"To demonstrate a substantial likelihood of success on the merits, the plaintiff must

make a showing of likely or probable, but not certain, success at trial."  Bar Navon v.

Sch. Bd. of Brevard Cnty., Fla., No. 6:06-cv-1434 ORL19KRS, 2007 WL 121342, at *3

(M.D. Fla. Jan. 11, 2007) (citing Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223,

12

1232 (11th Cir. 2005) (citing Home Oil Co., Inc. v. Sam's East, Inc., 199 F. Supp. 2d

1236, 1249 (M.D.Ala. 2002)).

### a. Legal Standards: Regulating Commercial Speech

The First Amendment provides that "Congress shall make no law ... abridging the

freedom of speech, or of the press." U.S. Const. amend. I.[8]  Plaintiffs' soliciting activities

are protected by the First Amendment.  See Village of Schaumberg v. Citizens for a

Better Environment, 444 U.S. 620, 629, 632-33, (1980).  In Village of Schaumberg, the

United States Supreme Court observed:

> [C]haritable appeals for funds, on the street or door to door,
> involve a variety of speech interests - communication of
> information, the dissemination and propagation of views and
> ideas, and the advocacy of causes - that are within the
> protection of the First Amendment.  Soliciting financial support
> is undoubtedly subject to reasonable regulation but the latter
> must be undertaken with due regard for the reality that
> solicitation is characteristically intertwined with informative and
> perhaps persuasive speech seeking support for particular
> causes or for particular views on economic, political, or social
> issues, and for the reality that without solicitation the flow of
> such information and advocacy would likely cease.
> Canvassers in such contexts are necessarily more than
> solicitors for money. Furthermore, because charitable
> solicitation does more than inform private economic decisions
> and is not primarily concerned with providing information about
> the characteristics and costs of goods and services, it has not
> been dealt with in our cases as a variety of purely commercial
> speech.

Id. at 632.  The Supreme Court held that an ordinance prohibiting door-to-door or on-

street solicitation of contributions by charitable organizations not using at least 75% of

their receipts for "charitable purposes," was unconstitutionally overbroad in violation of the

---

[8]  The First Amendment is applicable to the states through the Fourteenth Amendment to the
United States Constitution.  See, e.g., Mills v. Ala., 384 U.S. 214, 218 (1966).

First and Fourteenth Amendments.  The Court determined that the Village could craft less restrictive means for addressing its legitimate interest in preventing fraud.  Id. at 637-38.

In Riley, the Supreme Court held that a statute regulating professional fundraisers' solicitation of charitable contributions is protected speech, and that using percentages to decide the legality of a fundraiser's fee is not narrowly tailored to the state's interest in preventing fraud.  487 U.S. at 789-90.  Focusing on the statute's requirement that professional fundraisers disclose to potential donors, before an appeal for funds, the percentage of charitable contributions collected during the previous 12 months that were actually turned over to charity, the Court considered the statute as "a content-based regulation of speech," which was inextricably intertwined with the commercial speech aspects of solicitation, and thus entitled to the test for "fully protected expression."  Id. at 795-96, 798.

Despite the Supreme Court's observation that charitable solicitation may present a hybrid of speech, it has endorsed the application of a commercial speech analysis of content-neutral ordinances restricting door-to-door solicitation.  See Project 80's, Inc. v. City of Pocatello, 942 F.2d 635, 637-38 (9th Cir. 1991), on remand from City of Idaho Falls, Id. v. Project 80's, Inc., 493 U.S. 1013 (1990) (remanding youth organization and its coordinator's challenge to city ordinances banning door-to-door solicitation for further consideration of whether ordinance violates the First Amendment right to commercial speech in light of the decision in Board of Trustees of the State Univiversity of New York v. Fox, 492 U.S. 469 (1989) regarding whether the ordinances were more extensive than necessary under the Central Hudson analysis).

"The Constitution ... accords a lesser protection to commercial speech than to

other constitutionally guaranteed expression." <u>Cent. Hudson</u>, 447 U.S. 562–63.[9]

"'Commercial speech enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." <u>Harrell v. The Florida Bar</u>, 608 F.3d 1241, 1268 (11th Cir. 2010) (quoting <u>Florida Bar v. Went For It, Inc.</u>, 515 U.S. 618, 623 (1995)). Regulations that restrict the expression of protected commercial speech are analyzed under the "intermediate scrutiny" standard set forth in <u>Central Hudson</u>. <u>Id.</u> at 1269. Under this standard, the Court must "ask whether an imposition on commercial speech (1) promotes a substantial governmental interest; (2) directly advances the interest asserted; and (3) is not more extensive than necessary to serve that interest." <u>Id.</u> (citing <u>Cent. Hudson</u>, 447 U.S. at 564).[10] Unlike rational basis review, the <u>Central Hudson</u> standard does not permit the Court to supplant the precise interests put forward by the City with other suppositions. <u>Id.</u> (citing <u>Went For It</u>, 515 U.S. at 624). "'[T]he party seeking to uphold a restriction on commercial speech carries the burden of justifying it.'" <u>Tinsley Media, LLC v. Pickens Cnty., Ga.</u>, 203 F. App'x 268, 273 (11th Cir. 2006)[11] (quoting <u>Thompson v. W. States Med. Ctr.</u>, 535 U.S. 357, 373 (2002)).

In order to advance a substantial governmental interest, the City must

---

[9]  "Commercial speech" is "expression inextricably related to the economic interests of the speaker and audience." <u>Mason v. Florida Bar</u>, 208 F.3d 952, 955 (11th Cir. 2000).

[10]  There is no dispute that the Plaintiffs' speech is not misleading and concerns lawful activity, satisfying the threshold <u>Central Hudson</u> inquiry to determine whether the regulated speech is indeed protected commercial speech. 447 U.S. at 563-64.

[11]  "Although an unpublished opinion is not binding . . ., it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam). <u>See generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

"'demonstrate that the challenged regulation advances the Government's interest in a direct and material way.'" Borgner v. Brooks, 284 F.3d 1204, 1211 (11th Cir. 2002) (quoting Went For It, Inc., 515 U.S. at 625). "To find a 'substantial interest,' a court must conclude both that the interest advanced by the state is legitimate in theory, and that that interest is in remedying a problem that exists in fact (or probably would exist, but for the challenged legislation)." Sciarrino v. City of Key West, Fla., 83 F.3d 364, 367 (11th Cir. 1996). "[D]irect advancement of even one substantial interest is sufficient to preserve a statute." Id. at 369 (citing Went For It, Inc., 515 U.S. at 624 n. 1).

With respect to the Central Hudson requirement that the Ordinance not be more extensive than necessary to serve the City's substantial interest, the Court examines "'the relationship between the [City's] interests and the means chosen to serve them.'" Borgner, 284 F.3d at 1213 (quoting Went For It, Inc., 515 U.S. at 632). The Court does "not require that the regulation at issue be the least restrictive means available to accomplish the state's objective," but rather there be merely "'a fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable.'" Id. (quoting Fox, 492 U.S. at 480); see also Sciarrino, 83 F.3d at 370 (Central Hudson does not "require the city to employ the 'least restrictive means' imaginable." (citing Fox, 492 U.S. at 477-80)). "[C]ommercial speech protection demands 'not necessarily the least restrictive means but ... a means narrowly tailored to achieve the desired objective.'" Sciarrino, 83 F.3d at 370 (quoting Fox, 492 U.S. at 480). The burden to demonstrate that the restriction is "narrowly tailored" rests with the regulator, here the City. Id. (finding city ordinance restricting solicitation was narrowly tailored where the "record evidence[d] an absence of the 'numerous and obvious

16

less-burdensome alternatives to the restriction on commercial speech.'" (quoting City of

Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 417 n. 13 (1993)).[12]

### b.   Discussion

#### 1)   Substantial Government Interest[13]

The City argues that "[c]ommon sense dictates that the City's interests . . . in

protecting slightly older children by requiring adult supervision, have been and continue to

be advanced by enforcement of Section 250.707." Response at 8.  The City contends

that it has a "substantial interest in protecting the safety of its citizens, especially

---

[12]   The City contends that Section 250.707 should be analyzed as a "time, place and manner" restriction on speech, and that the Court need not engage in the "least restrictive alternative" inquiry. Response at 8-9.

"When the government seeks regulation that restricts content neutral expressive activity in a public forum, the First Amendment requires that the regulation satisfy the time, place, and manner test." Int'l Caucus of Labor Comm. v. City of Montgomery, 111 F.3d 1548, 1550 (11th Cir. 1997) (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)). Municipalities may impose time, place, and manner restrictions on protected speech of solicitors, canvassers, and pamphleteers in public forums "so long as the restrictions '(1) are justified without reference to the content of the regulated speech, ... (2) are narrowly tailored to serve a significant governmental interest, and ... (3) leave open ample alternative channels for communication of the information." Pine v. City of W. Palm Beach, Fla., 762 F.3d 1262, 1268-69 (11th Cir. 2014).  "The application of the Central Hudson test is 'substantially similar' to the test for the validity of time, place, and manner restrictions upon protected speech." Project 80's, 942 F.2d at 639 (quoting Fox, 492 U.S. at 477).

The Court follows the lead of Project 80's, Inc., 942 F.2d at 638, which was reviewed by the United States Supreme Court, and will analyze Section 250.707 as a restriction on door-to-door solicitation as purely commercial speech, under the precepts of Central Hudson, 447 U.S. at 562–63 and Fox, 492 U.S. at 480.  Notably, the Project 80's Court also reached the same conclusion using a "time, place and manner" analysis in addition to the Central Hudson commercial speech analysis.

[13]   The parties do not dispute that the Ordinance, on its face, is content neutral.  A speech restriction is content neutral if it is "justified without reference to the content of the regulated speech." Clark v. Community for Creative NonViolence, 468 U.S. 288, 293 (1984). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of a disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989); see also Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1259 (11th Cir. 2005) (in determining whether an ordinance is content neutral, courts generally look to the language of the ordinance to see if it distinguishes "disfavored speech on the basis of the ideas or views expressed") (quoting Turner Broad. Sys. v. FCC, 512 U.S. 622, 643 (1994)).  Thus, even if a regulation incidentally affects some speakers or messages but not others, it nonetheless qualifies as content-neutral if it serves purposes unrelated to the content of the expression. Ward, 491 U.S. at 791.

children." Id. The City also cites to prior case law which recognizes the safety of children and child labor concerns as substantial governmental interests. At oral argument on the Motion, counsel for Plaintiffs acknowledged that the City's interest in child safety and protecting against child labor are substantial, and that the City can rely upon past case law to establish the City's substantial interest in enacting Section 250.707(b). Rather, Plaintiffs contend that there is no evidence in the record that those are the actual reasons the Ordinance was passed. See also Reply at 4.

"To find a 'substantial interest,' a court must conclude both that the interest advanced by the state is legitimate in theory, and that that interest is in remedying a problem that exists in fact (or probably would exist, but for the challenged legislation)." Sciarrino, 83 F.3d at 367. The Government has a "traditional and transcendent interest in protecting the welfare of children." Maryland v. Craig, 497 U.S. 836, 855 (1990) (internal quotation marks and citations omitted).

> The state's authority over children's activities is broader than over like actions of adults. This is peculiarly true of public activities and in matters of employment. A democratic society rests, for its continuance, upon the healthy, well-rounded growth of young people into full maturity as citizens, with all that implies. It may secure this against impeding restraints and dangers, within a broad range of selection. Among evils most appropriate for such action are the crippling effects of child employment, more especially in public places, and the possible harms arising from other activities subject to all the diverse influences of the street. It is too late now to doubt that legislation appropriately designed to reach such evils is within the state's police power, whether against the parents claim to control of the child or one that religious scruples dictate contrary action.

Prince v. Massachusetts, 321 U.S. 158, 168-69 (1944).

In order to demonstrate the significance of its interest in the context of a First

18

Amendment challenge, "the City is not required to present detailed evidence." Int'l Caucus of Labor Comm. v. City of Montgomery, 111 F.3d 1548, 1551 (11th Cir. 1997) (holding, in the context of a First Amendment challenge to a city policy banning tables from city sidewalks that it was not necessary for the city "to present detailed evidence of pedestrian or traffic flow on or around specific sidewalks" in order to prove its interest was significant). Rather, "the City is entitled to advance its interests by arguments based on appeals to common sense and logic." Id. (citation and internal quotation marks omitted). As long as legislative judgment on the significance of the government's safety concerns is "not manifestly unreasonable ... [it] should not be set aside." Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 509 (1981); see also Cosac Found., Inc. v. City of Pembroke Pines, No. 12-62144-CV, 2013 WL 5345817, at *17 (S.D. Fla. Sept. 21, 2013).

While the record evidence before the Court at this juncture is sparse, the Court concludes, based upon the face of the Ordinance, and relying upon common sense and logic, that Section 250.707(b) serves the substantial governmental interest of protecting children, as proffered by the City in support of the Ordinance. By requiring close adult supervision of children between the ages of 14 and 17 while soliciting for funds and peddling door-to-door in neighborhoods, the Ordinance serves the purpose of protecting children from dangerous persons they may encounter and from vehicles using the streets, as well as preventing the abuses of child labor. See Prince, 321 U.S. at 168-69; New York Youth Club v. Town of Smithtown, 867 F. Supp. 2d 328, 335-36 (E.D.N.Y. 2012). The City has asserted valid goals, and the record, though slim indeed, supports the City's position that the problems stated are actual ones sought to be redressed, and that the Ordinance will have its intended effect. See Sciarrino, 83 F.3d at 369 ("[D]irect

advancement of even one substantial interest is sufficient to preserve a statute.").
Plaintiffs, on this scant record, have not clearly established that Section 250.707(b) does
not advance the City's substantial interest in protecting children, and that the City's
interest is manifestly unreasonable.

## 2) Narrowly Tailored

At oral argument, Plaintiffs focused their objection to Section 250.707(b) on the
language in the Ordinance requiring that the supervising adult (of at least 18 years of
age) "at all times have the minor in sight and shall in no event be more than 100 feet
away from the minor." Plaintiffs narrowed the relief sought to a preliminary injunction of
the 100 feet distance requirement. Plaintiffs argue that the 100 feet requirement is
"arbitrary," and "more restrictive than necessary to further the government's interests."
Reply at 3. At oral argument, Plaintiffs asserted that they were not contesting the
Ordinance's requirement that the youth be supervised by an adult. Rather, Plaintiffs
contend that the degree of supervision required by the Ordinance is too stringent, not
supported by any evidence, and does not pass constitutional muster.[14] Additionally,

---

[14] Plaintiffs contended at oral argument that a catcher can see second base, which is about 130
feet away, and that there is no evidence that a supervising adult could not oversee the youth from that
distance. Plaintiffs also argue that teenagers may legally drive in Florida at the age of 16 and deliver
pizzas. Whether teenagers can legally deliver pizzas is not before the Court. Plaintiffs cite to Section
450.061, Florida Statutes, as support for their argument that teenagers can solicit door-to-door for
nonprofit organizations. Section 450.061 provides:

> (1) No minor 15 years of age or younger, whether or not such person's
> disabilities of nonage have been removed by marriage or otherwise,
> shall be employed or permitted or suffered to work in any of the
> following occupations:
>
> . . .
>
> (n) Door-to-door selling of magazine subscriptions, candy,
> cookies, flowers, or other merchandise or commodities, except
> merchandise of nonprofit organizations, such as the Girl Scouts of

(continued...)

20

Plaintiffs note that the fact that teenagers may move door-to-door to spread their message unimpeded, without peddling goods or soliciting funds, undermines the City's "safety of children" argument.  Reply at 5.  Additionally, presumably addressing their "as applied" challenge, Plaintiffs contend that the the Ordinance leaves the YOA and its members with "no alterative channels" to engage in door-to-door soliciting and peddling because Boykins, as director of YOA, is the members' only means of participating in this activity.

The City responds that the 100 feet requirement puts the adult supervisor "out in the street" while the teens go door to door, a "normal" distance for adult supervision. Additionally, the City argues that the 100 feet supervision requirement does not stop anyone under the age of 18 from soliciting door to door or from belonging to the YOA.

A regulation is "narrowly tailored" to implement the government's substantial governmental interest if it reasonably advances that objective.  Borgner, 284 F.3d at 1213 ("We do not require that the regulation at issue be the least restrictive means available to accomplish the state's objective. Rather, we merely require 'a fit between the legislature's ends and the means chosen to accomplish those ends—a fit that is not necessarily perfect, but reasonable.'" (quoting Fox, 492 U.S. at 480)).

The Court need not engage in an analysis of "what if's" and hypotheticals to determine how many feet away an adult supervisor must stand from the youth soliciting door to door, to carry out the substantial governmental interest of protecting children from

---

[14](...continued)
America or the Boy Scouts of America.

Fla. Stat. Ann. § 450.061(1)(n); see also 29 C.F.R. § 570.33(j).

danger and exploitative child labor. Even if the Ordinance were to accomplish the City's purpose with a 130 foot adult supervision requirement (home plate to second base),[15] the Ordinance on this record is sufficiently narrowly tailored to meet the City's stated objective. See Fox, 592 U.S. at 480; see also Sciarrino, 83 F.3d at 370 ("The record evidences an absence of the 'numerous and obvious less-burdensome alternatives to the restriction on commercial speech' . . . which might require invalidation on this ground." (citation omitted)). As to Plaintiffs' argument that childhood safety may be placed at risk by their unfettered ability to travel door-to-door to speak of the mission of YOA, "[t]he Supreme Court has conclusively indicated that a regulation may 'directly advance' its asserted ends, though it strikes at less than the entire problem." Sciarrino, 83 F.3d at 369 n.7 (citing Metromedia, Inc., 453 U.S. at 511). Moreover, Plaintiffs' argument that the Ordinance provides no alternative channel for YOA or its members to exercise their commercial speech, see Reply at 5, is without merit. Nothing about the Ordinance on its face or as applied to YOA, precludes members of YOA from peddling or soliciting door-to-door, even if supervised only by Boykins, or for that matter, any person 18 years of age or older. Plaintiffs have offered no explanation why Pastor Boykins is unable to comply with the 100 foot "line of sight" requirement of Section 250.707(b), or to engage in fundraising activities in other ways. See One World One Family Now v. City of Miami Beach, 175 F.3d 1282, 1288 (11th Cir. 1999) (holding that an ordinance restricting the use of portable tables by nonprofit corporations in selling message-bearing t-shirts on public walkways in city's commercial district left alternative channels for nonprofit groups to communicate

---

[15]  The distance between home plate and second base on a Major League Baseball field is 127 feet and 3 3/8 inches. See mlb.mlb.com/mlb/official_info/.../objectives_1.jsp (last visited May 18, 2015).

22

their message, and stating "That the city's limitations may reduce the potential audience
to some degree is of no consequence, for there has been no showing that the remaining
avenues are inadequate."). As such, the Court, on this record, cannot conclude that
requiring adult supervision within 100 feet of door-to-door solicitation and peddling by
teenagers between the ages of 14 and 17 burdens "substantially more speech than is
necessary to further the government's legitimate interest," Smith v. City of Fort
Lauderdale, Florida, 177 F.3d 954, 956 (11th Cir. 1999) (internal quotations and citations
omitted), and is not reasonably and sufficiently narrowly tailored to meet the City's
objective.

On this record, Plaintiffs have failed to convincingly demonstrate a substantial
likelihood of success on the merits on their facial and "as-applied" challenges to Section
250.707(b), or to make a clear showing that an injunction pertaining to all or any part of
Section 250.707(b) before trial is demanded by the Constitution.

### 2.    Irreparable Injury[16]

In order to satisfy the irreparable injury requirement, the movant must establish a
real and immediate threat of harm. See City of Los Angeles v. Lyons, 461 U.S. 95, 111
(1983); SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A., 243 F. App'x
502, 504 (11th Cir. 2007); Alabama v. United States Army Corps of Eng'rs, 424 F.3d
1117, 1134 (11th Cir. 2005). The Eleventh Circuit has recognized that preliminary
injunctive relief is not available merely upon a showing of an infringement of a legal right,

---

[16]    Because Plaintiffs are unable to show a substantial likelihood of success on the merits of
their First Amendment claim, the Court need not consider the other requirements. Bloedorn v. Grube,
631 F.3d 1218, 1229 (11th Cir. 2011). The Court, however, will briefly review the remaining requirements
for a preliminary injunction.

but rather only "when that legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." Alabama, 424 F.3d at 1127. Ongoing suppression of free expression, as protected by the First Amendment, may constitute irreparable harm, for which there is no adequate legal remedy. See Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); NE Fla. Chapter, 896 F.2d at 1285. This is because "chilled free speech . . . , because of [its] intangible nature, [can] not be compensated for by monetary damages; in other words, plaintiffs could not be made whole." NE Fla. Chapter, 896 F.2d at 1285. However, "a violation of the First Amendment 'does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits,'" if the injury may be characterized as an "'incidental inhibition' of First Amendment rights" as opposed to a "'direct penalization.'" KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1272 (11th Cir. 2006) (quoting Hohe v. Casey, 868 F.2d 69, 72–73 (3d Cir.1989)); see also Cate v. Oldham, 707 F.2d 1176, 1188 (11th Cir. 1983) ("direct penalization, as opposed to incidental inhibition, of First Amendment rights constitutes irreparable injury").

Plaintiffs argue that "the irreparable harm is clear because even the briefest of infringements of First Amendment rights constitutes irreparable injury." Motion at 7 (citing Elrod, 427 U.S. at 373-74). Plaintiffs also argue that prospective members are discouraged from joining YOA because of the operation of the Ordinance, though they cite to no evidence in support. The City contends that Plaintiffs "have shown no basis to find they would be irreparably harmed during the course of these proceedings if children

24

going door-to-door must be supervised by an adult."  Response at 11.  The City also argues that First Amendment concerns are inapplicable because the Ordinance "is not aimed at non-commercial speech and leaves plenty of alternative channels open for commercial solicitation and peddling."  Id.

While the City's regulation of door-to-door solicitation by teenagers between the ages of 14 and 17 does implicate their First Amendment right to commercial speech, Section 250.707(b) is not directed at penalizing the speech itself, but rather incidentally impacts upon the youths' solicitation and peddling activities by requiring that an adult 18 years of age or older be supervising from no further than 100 feet and in the line of sight. Plaintiffs have not made a clear showing that they will suffer the type of irreparable harm such that an injunction before trial is definitely demanded by the Constitution.

### 3.     Weighing the Harm to the Plaintiffs and the City

The balance of the harms element of the preliminary injunction test requires that Plaintiffs establish that the harm they would suffer in the absence of an injunction outweighs the harm that might befall the City if the injunction is granted. The focus is on any harm that will occur between the grant of the injunction and a final trial on the merits. See United States v. Lambert, 695 F.2d 536, 539-40 (11th Cir.1983).  Plaintiffs contend that they satisfy this preliminary injunction requirement because  they "suffer irreparable harm from the clear violation of their First Amendment and Fourteenth Amendment rights."  Motion at 7; Reply at 7.   Not surprisingly, the City argues that "[t]he balance of harm clearly weighs in favor of the City," because "[c]ommon sense dictates" that the Ordinance serves the City's obligation to provide for the safety of its citizens, maintain its police powers,  and protect children from "the evils that result from child labor."

25

Response at 12. The City adds that the Ordinance "does not ban or even substantially restrict the ability of organizations such as YOA to sell their goods, seek donations, or further their message." Id.

The chief harm to the Plaintiffs in the continued enforcement of the Ordinance pending this litigation, and thus far established by the Plaintiffs, is that YOA and Boykins will be required to more closely supervise the teenagers' solicitation and peddling activities. This concern is balanced against the City's interest in protecting against endangerment and exploitation of even just one child should the enforcement of the Ordinance be preliminarily enjoined. Plaintiffs have not clearly satisfied their burden of persuasion on this requirement, and the balance of equities tips in favor of the City, on this record as developed thus far.

### 4.   Public Interest

Finally, Plaintiffs have the burden of showing that the requested injunction would not disserve the public interest. Michel-Trapaga v. City of Gainesville, 907 F. Supp. 1508, 1513 (N.D. Fla. 1995). The Plaintiffs argue that "the public interest is clearly served by an injunction protecting fundamental rights secured under the constitution." Motion at 7; see generally KH Outdoor, LLC, 458 F.3d at 1272 ("The public has no interest in enforcing an unconstitutional ordinance."). The City responds that the "citizens of Jacksonville have an interest in protecting their children from child labor, criminal activity, and potential injury from unsupervised solicitation and peddling door-to-door in widespread neighborhoods throughout the large City." Response at 12. Moreover, the City contends that the Ordinance does not restrict Plaintiffs' "'fundamental rights.'" Id. The Court finds that, on this record, the public interest tips towards the continued enforcement of Section

250.707(b) pending the outcome of this litigation. Plaintiffs have failed to show with evidence how their First Amendment right to commercial speech is unduly impeded, and that their solicitation and peddling activities are precluded by the Ordinance. On the other hand, the public interest in protecting children is paramount and undisputed.

Accordingly, Plaintiffs are not entitled to preliminary injunctive relief based upon their First Amendment as-applied and facial challenges to the Ordinance.

## D. Count II: Substantive Due Process

"'[T]he substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty.""

Kentner v. City of Sanibel, 750 F.3d 1274, 1279 (11th Cir. 2014) (quoting McKinney v.

Pate, 20 F.3d 1550, 1556 (11th Cir.1994), cert. denied, 135 S. Ct. 950 (2015)).

Fundamental rights are those rights created by the Constitution. Id. If a state law or city ordinance infringes on a fundamental right, the law is subject to strict scrutiny and a court upholds the law only if it is "narrowly tailored to serve a compelling state interest." Doe v. Moore, 410 F.3d 1337, 1343 (11th Cir. 2005) (quotation marks and citation omitted).

> The Supreme Court has recognized that fundamental rights include those guaranteed by the Bill of Rights as well as certain "liberty" and privacy interests implicit in the due process clause and the penumbra of constitutional rights. See Washington v. Glucksberg, 521 U.S. 702, 720 (1997); Paul v. Davis, 424 U.S. 693, 712–13 (1976). These special "liberty" interests include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." Glucksberg, 521 U.S. at 720.

Id. Thus, "'parents have a constitutionally protected liberty interest in the care, custody and management of their children.'" Maddox v. Stephens, 727 F.3d 1109, 1118-19 (11th

27

Cir. 2013) (quoting Doe v. Kearney, 329 F.3d 1286, 1293 (11th Cir.2003)). A statute may be deemed to unconstitutionally infringe upon a parent's substantive due process right if it "'unreasonably interfere[s] with the liberty of parents and guardians to direct the upbringing and education of children under their control.'" Robertson v. Hecksel, 420 F.3d 1254, 1257 (11th Cir. 2005) (emphasis added) (quoting Pierce v. Soc'y of Sisters, 268 U.S. 510, 534–35 (1925)). However, in order to trigger substantive due process protection, the Ordinance must either directly or unduly burden the fundamental rights claimed by Plaintiffs. See Doe v. Moore, 410 F.3d at 1344. "When a state enacts legislation that infringes fundamental rights, courts will review the law under a strict scrutiny test and uphold it only when it is 'narrowly tailored to serve a compelling state interest.'" Id. at 1343 (quoting Reno v. Flores, 507 U.S. 292, 302 (1993)).

Focusing upon the parent Plaintiffs, Plaintiffs argue that the City "lacks a compelling state interest for infringing on Plaintiffs' fundamental rights" to the "'care, custody, and control of their children.'" Motion at 5 (citing Troxel v. Granville, 530 U.S. 57, 65 (2000)). The Court disagrees. Nothing about Section 250.707(b) directly, unduly or unreasonably burdens the fundamental rights of the parent Plaintiffs in the care, custody and management of their children. The parent Plaintiffs are free to entrust their children to YOA at any time they wish. What the Ordinance does do is regulate YOA's fundraising business model of sending youth door-to-door to solicit funds by requiring adult supervision.

Plaintiffs also contend that the Ordinance violates their substantive due process right to free association under the First Amendment. Motion at 5. While the Supreme Court has recognized a substantive due process right "'to enter into and carry on certain

28

intimate or private relationships,'" Boy Scouts of America v. Dale, 530 U.S. 640, 698 n.26 (2000) (citation omitted), a claim of deprivation of the right to freely associate is more properly brought under the First Amendment. Id. ("[I]t is impossible to conclude that being a member of the Boy Scouts ranks among those intimate relationships falling within this [substantive due process] right, such as marriage, bearing children, rearing children, and cohabitation with relatives.")[17]

Plaintiffs' allegation that the Ordinance violates their First Amendment right to free association "because it forbids them from soliciting funds and advocacy in the company of their fellow members," Complaint ¶ 49, is not borne out by the evidence in this record. Nothing about the Ordinance precludes YOA members from joining YOA, associating with YOA members, or soliciting and advocating in the company of their fellow members.

Plaintiffs have not clearly established a substantial likelihood of success on their

---

[17] The Eleventh Circuit in McCabe v. Sharrett, 12 F.3d 1558, 1562 (11th Cir. 1994), made the following distinction:

> According to Supreme Court precedent, the United States Constitution accords special protection to two different forms of association, "intimate association" and "expressive association." . . . [T]he right of intimate association - the freedom to choose to enter into and maintain certain intimate human relationships - is protected from undue governmental intrusion as a fundamental aspect of personal liberty. . . . At minimum, the right of intimate association encompasses the personal relationships that attend the creation and sustenance of a family - marriage, childbirth, the raising and education of children, and cohabitation with one's relatives. . . . Whether the right extends to other relationships depends on the extent to which those attachments share the qualities distinctive to family relationships, such as "relative smallness" and "seclusion from others in critical aspects of the relationship." . . . The right of expressive association - the freedom to associate for the purpose of engaging in activities protected by the First Amendment, such as speech, assembly, petition for the redress of grievances, and the exercise of religion - is protected by the First Amendment as a necessary corollary to the rights that the amendment protects by its terms.

McCabe, 12 F.3d at 1562-63 (citing Roberts v. United States Jaycees, 468 U.S. 609, 617-20 (1984)).

29

substantive due process claim.

### E.    Count III: Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV.  "The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216 (1982) (quoting F.S. Royster Guano Co. v. Virginia, 253 U.S. 412, 415 (1920)).  In determining whether a statute, regulation, or ordinance violates the Equal Protection Clause of the United States Constitution, the Court begins its analysis by determining the proper level of scrutiny to apply for review.  "If a law treats individuals differently on the basis of race or another suspect classification, or if the law impinges on a fundamental right, it is subject to strict scrutiny. Avera v. Airline Pilots Ass'n Int'l, 436 F. App'x 969, 974 (11th Cir. 2011) (citing Eide v. Sarasota County, 908 F.2d 716, 722 (11th Cir.1990)).  "Otherwise, the law need only have a rational basis—i.e., it need only be rationally related to a legitimate government purpose."  Id.; see e.g., Gary v. City of Warner Robins, Ga., 311 F.3d 1334, 1337 (11th Cir. 2002).  Plaintiffs contend that the Ordinance "employs a suspect classification - race," and that "Defendant lacks a compelling state interest for infringing on Plaintiffs' fundamental rights or for their disparate treatment of Plaintiffs based on their race."  Motion at 6.

"A facially neutral state law will not be struck down as unconstitutional 'because it results in a racially disproportionate impact.... Proof of racially discriminatory intent or purpose is required.'" I.L. v. Alabama, 739 F.3d 1273, 1277 (11th Cir.) (quoting Hunter v. Underwood, 471 U.S. 222, 227–28 (1985)), cert. denied sub nom., Lynch v. Alabama,

135 S. Ct. 53 (2014).

> [A] a law that is neutral on its face violates the Equal
> Protection Clause if discrimination was a substantial or
> motivating factor in the government's enactment of the law,
> and if the government cannot show that the law would have
> been enacted in the absence of any discriminatory motive.
> "[U]nless there is a clear pattern that [the law] is impacting one
> race more than another, impact alone is not determinative[.]"

I.L. v. Alabama, 739 F.3d at 1278 (quoting Young Apartments, Inc. v. Town of Jupiter,

529 F.3d 1027, 1043–45 (11th Cir.2008).[18]  Plaintiffs provide no evidence that racial

discrimination was a substantial motivating factor behind the City's passage of the

Ordinance, or that there is a clear pattern that the law is impacting African-Americans

more than others.  Moreover, as set forth above, Plaintiffs have not made a clear showing

that the Ordinance targets a suspect class or violates any fundamental rights.  As such,

the Ordinance is rationally related to the City's legitimate purpose of protecting children.

Plaintiffs have not clearly established a substantial likelihood of success on their

equal protection claim.[19]

---

[18]   The Eleventh Circuit notes that:

> The Supreme Court has observed that "[p]roving the motivation behind
> official action is often a difficult undertaking." Hunter, 471 U.S. at 228.
> It has, however, set forth "subjects of proper inquiry in determining
> whether racially discriminatory intent existed." Village of Arlington
> Heights v. Metro. Housing Dev. Corp., 429 U.S. 252, 268 (1977).
> These include the racial "impact of the official action," the "historical
> background of the decision," the "specific sequence of events" leading
> to the decision, procedural or substantive "departures from the normal"
> sequence, and "legislative or administrative history." Id. at 266–68.

I.L. v. Ala., 739 F.3d at 1286.

[19]   For the reasons set forth above, Plaintiffs likewise also fail to establish the remaining three
prerequisites for entry of a preliminary injunction vis a vis their substantive due process and equal
protection claims.

## Conclusion

The Court in its discretion determines that Plaintiffs' Motion for Preliminary Injunction is due to be denied.  In doing so, the Court preserves the relative positions of the parties until a trial on the merits can be held.  "Preservation of the status quo enables the court to render a meaningful decision on the merits."  Lambert, 695 F.2d at 539-40.

Accordingly, it is hereby

**ORDERED**:

Plaintiffs' Motion for Preliminary Injunction (Doc. 2) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, this 19th day of May 2015.

BRIAN J. DAVIS
United States District Judge

jl

Copies furnished to:

Counsel of Record

32