UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

YOUTH OPPORTUNITIES OF
AMERICA, INC., STEPHEN BOYKINS,
B.A.P., individually and as Next Friend of
B.P. and K.P., S.C., individually and as
Next Friend of D.B., P.S., individually and
as Next Friend of D.S., and C.W., individually
and as Next Friend of J.H.,

    Plaintiffs,

vs.

CITY OF JACKSONVILLE,

    Defendant.
_____/

Case No.: 3:15-cv-00449-J-39PDB

## CITY OF JACKSONVILLE'S MOTION TO DISMISS COMPLAINT

    Defendant, the City of Jacksonville ("the City"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss Plaintiffs' Complaint. [Doc. 1] As discussed below, dismissal is warranted because Plaintiffs have failed to state a claim that the City's solicitation and peddling ordinance at issue violates their rights under the United States Constitution.

### Background and Factual Allegations

    1.    Plaintiffs challenge Section 250.707 of the City of Jacksonville Ordinance Code ("the Ordinance"), a 22-year-old local law which: (i) prohibits door-to-door residential solicitation or peddling by children under 14 years of age; and (ii) requires adult supervision of any child doing so who is between the age of 14 and 18. [Doc. 1, *Compl.*, ¶¶ 1, 35-39]

2. Plaintiff, Youth Opportunities of America, Inc. ("YOA"), is a not-for-profit corporation established in 2014, and succeeds "Teens Against Drugs and Alcohol, Inc.," a "business since 1992." [*Id.*, ¶¶ 16-17]

3. Plaintiff Stephen Boykins, the Pastor of "Bibleway Full Gospel Christian Fellowship," is the founder and director of YOA. [*Id.*, ¶ 5]

4. "J.H.," a minor represented by parent "C.W." in this case, is the only named Plaintiff who is a member of YOA. The remainder of the named Plaintiffs are former members, all but one of whom represent minors whose membership is "prospective."[1] [*Id.*, ¶¶ 6-14]

5. The purpose of YOA "is to provide educational and social opportunities for at-risk youth in socially and economically disadvantaged areas … and learn how to function in the world of business." [*Id.*, ¶¶ 5, 18-20]

6. YOA's "unique method" of providing such opportunities involves its members being transported to "mostly white" neighborhoods to "go door-to-door … and explain their mission and sell candy and small items to raise money for the activities of YOA." [*Id.*, ¶ 21][2]

7. Members are apparently transported to these neighborhoods by Pastor Boykins and others, as many of their parents allegedly cannot provide such transportation. [*Id.*, ¶¶ 28, 50]

---

[1] "B.A.P." is a former member and parent of prospective members "B.P." (age 10) and "K.P." (age 15); "S.C." is the parent of prospective member "D.B." (age 10); and "D.S." is the parent of former member "P.S." (age 17). [Doc. 1., *Compl.*, ¶¶ 6-14]

[2] According to the Complaint, YOA members "earn credit that can be redeemed to participate in field trips … or for merchandise," and their membership allows them to learn career skills, earn their own money, and benefit from the mentoring and counseling of Pastor Boykins. [*Id.*, ¶¶ 22, 24-25]

8. It is alleged that YOA members were on numerous occasions confronted by law enforcement officers in various neighborhoods, and directed to cease their activities and leave the area. [*Id*., ¶ 34]

9. In June 2014, Pastor Boykins was individually "charged by information with contributing to the delinquency of a minor" in violation of state law (specifically Section 827.04(1)(a) of the Florida Statutes) and for violating the City's Ordinance – though the Ordinance "charges" were dismissed. [*Id.*, ¶ 35]

10. Plaintiffs allege that the Ordinance effectively deprives members of "the benefits of membership in YOA, in that they will be unable to raise money in the City of Jacksonville where they sold items prior to the date of this ordinance." [*Id.*, ¶ 39].

11. The Ordinance also allegedly burdens and prevents Plaintiffs from advocating the interests of YOA, and interferes with the fundamental right of parents to raise their children as they see fit. [*Id.*, ¶¶ 43, 48]

12. Plaintiffs have therefore sued the City under 42 U.S.C. § 1983 for purportedly violating: their freedom of speech as protected by the First Amendment (Count I); their substantive due process rights purportedly guaranteed by the Fourteenth Amendment (Count II); and the rights secured to them by the Equal Protection Clause of the Fourteenth Amendment (Count III).[3]

13. On May 19, 2015, the Court entered an Order denying Plaintiffs' Motion for Preliminary Injunction. [*See* Doc. 2, *Motion for Preliminary Injunction*; Doc. 16, *Order Denying Motion for Preliminary Injunction*]

---

[3] Under Count III, Plaintiffs apparently allege that the Ordinance violates their right to equal protection "because it infringes on [their] fundamental rights and it treats [them] differently than other similarly situated groups, on the basis of their race." [Doc. 1, *Compl.*, ¶ 59]

14.     In its Order, the Court concluded that the purpose of the Ordinance is clear on its face: to protect children in the City of Jacksonville.

15.     As explained below, the same reasoning contained in the Court's order denying preliminary injunctive relief applies with equal force here, and supports dismissal of all claims asserted by Plaintiffs – certainly to the extent that they are predicated on a finding that the Ordinance is facially invalid.

## MEMORANDUM OF LAW

**A.     Motion to Dismiss Standard.**

To overcome dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain sufficient facts which, if accepted as true, state a claim for relief that is *plausible* on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  While a court "should make reasonable inferences in Plaintiff's favor, [it] is not required to draw plaintiff's inference."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012).

In ruling on a motion to dismiss under Rule 12(b)(6), a court must view the complaint in a light most favorable to the plaintiff, and limit its consideration to the pleadings and any exhibits thereto attached.  *See Thaeter v. Palm Beach Cnty. Sherriff's Office,* 449 F.3d 1342, 1352 (11th Cir. 2006); *see also* Fed.R.Civ.P. 10(c).  However, a court may consider documents attached to the motion itself that are "central" to the claims asserted in the complaint and their authenticity is beyond any reasonable dispute.

*See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *see also Sch. Bd. of Manatee Cnty., Fla. v. L.H. ex rel. D.H.*, 666 F. Supp. 2d 1285, 1288 (M.D. Fla. 2009).

A district court may take judicial notice of and consider public records that are not subject to reasonable dispute when undertaking a Rule 12(b)(6) analysis. *See Horne v. Potter*, 392 Fed. App'x. 800, 802 (11th Cir. 2010); *see also* Fed.R.Evid. 201(b). A district court need not accept as true allegations in a complaint that are contradicted by exhibits or facts capable of judicial notice. *See Sterling v. Provident Life and Acc. Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007).

**B.     Threshold Standing and Pleading Failures.**

In its 32-page Order denying Plaintiffs' Motion for Preliminary Injunction (Doc. 16), the Court's careful and detailed analysis of Plaintiffs' constitutional claims for purposes of injunctive relief included numerous dispositive legal determinations which now dictate dismissal of the Complaint. For example, the Court noted standing issues with regard to some of the Plaintiffs who are either not YOA members or are at most prospective members, and it noted that the Complaint fails to identify exactly which Plaintiffs are asserting substantive due process and equal protection claims. [Doc. 16, *Order*, pgs. 5-6, 8-9, n.5] These pleading failures alone raise questions as to standing and the nature of Plaintiffs' claim, necessitating dismissal.

Furthermore, as discussed in more detail below, the Court made purely legal determinations in its Order that, while supporting denial of preliminary injunctive relief, also support dismissal of Plaintiffs' claims under Rule 12(b)(6). For example, the Court concluded that, based on the face of the Ordinance and common sense, the Ordinance serves the City's substantial interest in protecting children. Moreover, the Court

5

concluded that the 100-foot supervision rule does not burden more speech than is necessary to further the City's interest, and that nothing on the face of the Ordinance precludes members of YOA from peddling or soliciting door-to-door, even if children are involved. [Doc. 16, *Order*, pgs. 22-23] These critical legal determinations, among others, were made on the basis of Plaintiffs' Complaint and the face of the Ordinance, and should result in dismissal of the Complaint under Rule 12(b)(6). *See Bhalerao v. Ill. Dep't of Fin. And Prof. Regs.*, 2012 WL 5560887, *2, 3-4 (N.D. Ill. 2012) (relying on court findings previously made in order denying preliminary injunction and granting subsequent motion to dismiss complaint with prejudice).

**C.     Plaintiffs Fail to State a Constitutional Claim.**

As this Court correctly noted in its Order, facial challenges to laws are disfavored because such challenges seek to strike down the application of the law in every circumstance, in that there is no constitutional application of the law. *See Fla. Ass'n of Professional Lobbyists, Inc. v. Div. of Legislative Info. Svcs.*, 525 F.3d 1073, 1079 n.7 (11th Cir. 2008); *Williams v. Pryor*, 240 F.3d 944, 953 (11th Cir. 2001). Here, the face of the Ordinance makes clear that it regulates commercial speech and nothing therein suggests a content-based application. It is therefore subject to and easily passes constitutional muster under an intermediate level of scrutiny.

The Ordinance covers *all* solicitation and peddling of goods by children, regardless of the nature of their organization, its purpose, or their *message*. What's more, it does not even completely ban solicitation or peddling by children. Rather, it merely requires supervision by *any adult* over 18 years of age and prohibits children under 14 from soliciting or peddling at all. Because the Ordinance regulates only the *manner* in

which *any* residential solicitation and peddling can occur, it is subject to the typical "time, place, and manner" analysis, which asks whether the regulation is reasonable, narrowly tailored to serve a significant government interest, and leaves open ample alternatives for communication. *See, e.g., New York Youth Club v. Town of Smithtown*, 867 F.Supp.2d 328, 335 (E.D.N.Y. 2012) (discussing cases and applying time, place, and manner analysis to commercial speech).[4]

The Ordinance furthers public safety and the protection of children by requiring adult supervision when children under the age of 18 are going door-to-door in neighborhoods throughout Jacksonville. While door-to-door solicitation is a form of protected speech, such speech can be validly regulated by the City pursuant to its police powers. Applicable legal authority and common sense support the exercise of such police powers to protect children while leaving alternative channels open for Plaintiffs to exercise their rights and freely engage in solicitation or peddling that will not jeopardize children. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1318 (11th Cir. 2000) (reasoning that the city may rely on common sense and logic to support legislative enactments); *Occupy Fort Myers v. City of Fort Myers*, 882 F. Supp. 2d 1320, 1330 (M.D. Fla. 2011) (same).

The City's interests in public safety – especially the safety of children – are certainly at least "legitimate in theory" in that they remedy "a problem that exists in fact (or probably would exist, but for the challenged legislation)." *Sciarrino v. City of Key*

---

[4] In its Order denying Plaintiffs' Motion for Preliminary Injunction, the Court analyzed this Ordinance as a content-neutral regulation affecting purely commercial speech. It also recognized that, whether analyzed under the commercial speech doctrine or as a time, place, and manner restriction, the Ordinance is content neutral and subject to an intermediate level of scrutiny. [Doc. 16, *Order,* p. 17, n.12; *citing Project 80's, Inc. v. City of Pocatello*, 942 F.2d 635, 637-38 (9th Cir. 1991)]. Under either approach, the Ordinance does not unconstitutionally limit speech.

*West, Fla.*, 83 F.3d 364, 367 (11th Cir. 1996).  Without the Ordinance, parents, guardians, and organizations like YOA would be permitted to have very young children under their care to solicit alone, door-to-door, in unfamiliar neighborhoods – all of which jeopardizes their safety.  The City's "interests" in their health and welfare could not be more manifest.

The district court's decision in *New York Youth Club* is most analogous to this case in that it deals directly with door-to-door solicitation by children.  Similar to this case, the group in *New York Youth Club* wished to send children into neighborhoods unsupervised to solicit and peddle goods.  *See New York Youth Club*, 867 F. Supp. 2d at 331.[5]  The district court in *New York Youth Club*, like this Court, recognized the City's interests in regulating soliciting and peddling, particularly when children are involved.  *See id.* at 333, *citing Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150, 162 (2002); *Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 628-32 (1980).

Because the ordinance at issue in *New York Youth Club* was content neutral and did not ban all solicitation, just like the Ordinance here, it was subject to the reasonable time, place, or manner analysis.  *See New York Youth Club*, 867 F. Supp. 2d at 335.  This Court has already recognized, based on common sense and without the need for evidence, that the Ordinance on its face passes this level of intermediate scrutiny.  [Doc. 16, *Order*, pg. 19]  The Court should now dismiss the Complaint.

Both this Court and the district court in *New Youth Club* specifically acknowledged the importance of protecting the safety and welfare of children within the

---

[5] In contrast to this case, the ordinance in Smithtown required supervision by a parent or legal guardian of any child, while the Ordinance at issue here only requires supervision by any adult.  *See id.*

8

city. The New York district court stated that "[g]overnments possess an important interest in ensuring the welfare of children in general," and in particular preventing the abuses of child labor. *Id.*, *citing Maryland v. Craig*, 479 U.S. 836, 855 (1990); *Hodgson v. Minnesota*, 497 U.S. 417, 444 (1990); *Prince v. Massachusetts*, 321 U.S. 158, 168-70 (1944).[6] It also cited to reports of the United States Department of Labor as supporting the city's interests in child safety and preventing the abuses of child labor. *See id.*[7]

While Plaintiffs in this case *allege* that their free speech, free association, due process, equal protection, and parental rights are being violated, such allegations ring hollow. Their own filings show that the City has, for over two decades, required adult supervision when children go door-to-door to solicit or peddle goods in neighborhoods. And "Teens Against Drugs and Alcohol, Inc.," which was allegedly formed in 1992 and succeeded by YOA, survived the entire span. At bottom, this much undermines any reasonable inference that the Ordinance unduly burdens YOA or its members, or somehow invades parental rights.

---

[6] The City recognizes that the district court in *New York Youth Club* denied a motion to dismiss because, on the face of the complaint, it was unclear whether the city actually relied on such studies in passing the ordinance. *See id.* However, the district court cited cases involving city regulations of the "secondary effects" associated with adult entertainment, where the ordinances at issue actually regulated the *content* of adult expression, but the government claimed the regulation was passed to combat non-speech related issues such as the prevention of crime. The *New York Youth Club* court pointed out that the city was obligated to show it considered such "secondary effects" prior to passing the ordinance, to demonstrate that it was not passed to actually regulate the content of speech. *See id.* By contrast, the City's Ordinance here is content-neutral. *Compare Pruett v. Harris County Bail Bond Board*, 499 F.3d 403, 410 (5th Cir. 2007) (using evidence generated after enactment of statute to analyze constitutionality of various provisions of law regulating solicitation by bail bondsmen). The Court has already stated that common sense, logic, and prior judicial decisions dictate that Section 250.707 furthers the City's interest in public safety; no further evidence is needed. [Doc. 16, *Order*, pg. 19]

[7] One such report discussed "children being abandoned, suffering injuries from violence and motor vehicle crashes, and being exposed to the elements." *Id.* at 335, *quoting* Child Labor Regulations, Orders and Statements of Interpretation, 75 Fed. Reg. 28404 (May 20, 2010). Another Department of Labor Regulation characterized solicitation and peddling by children as "oppressive child labor within the meaning of the Fair Labor Standards Act when performed by minors who are 14 and 15 years of age." *Id.*, *quoting* 29 C.F.R. § 570.33.

9

Notably, the time, place, and manner analysis does not impose a "least restrictive means" of furthering child safety. As long as there is "a fit between the legislature's ends and the means chosen to accomplish those ends," which is reasonable, the Ordinance passes muster. *See Borgner v. Brooks,* 284 F.3d 1204, 1213 (11th Cir. 2002). As the Third Circuit Court of Appeals recognized in *Pennsylvania Alliance for Jobs and Energy v. Council of the Borough of Munhall*, 743 F.2d 182, 186-87 (3d Cir. 1984), content-neutral restrictions on door-to-door canvassing, even if not regulating purely commercial speech, require only a reasonable link between the regulation and the interests to be served. *See id.* at 187-88; *see also Assoc. of Community Organizations for Reform Now v. Town of East Greenwich*, 453 F. Supp. 2d. 394, 405-406 (D.R.I. 2006) (denying motion to preliminarily enjoin town's solicitation ordinance and reasoning that the ordinance did not fail the "narrowly drawn" portion of the time, place and manner analysis "simply because there may be some less restrictive method by which the proffered government interest might be served."); *see also Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 571 (6th Cir. 2012) (applying time, place, and manner analysis to door-to-door solicitation legislation). This Court has already found a "reasonable link" in this case.

The district court in *Association of Community Organizations* pointed out that "it is almost always possible to hypothesize a less restrictive alternative to any ordinance," and courts would have to decide what alternative best meets a city's needs in relation to door-to-door solicitation, "a task courts are ill-equipped to perform." *Assoc. of Community Organizations*, 453 F. Supp. 2d at 406.[8] Therefore, all that is required in this

---

[8] For example, Plaintiffs posit that pairing children together, requiring an adult to be responsible for no more than 10 children, or using mobile devices would be less restrictive alternatives to the City's

case is a "substantial government interest that would be achieved less effectively absent the regulation." *Ward v. Rock Against Racism*, 491 U.S. 781, 798-99 (1989). Given the long-recognized interests in public safety and crime prevention, discussed above, requiring adult supervision of children going door-to-door certainly advances the City's interests.

The City's interests in privacy, safety, and prevention of fraud allow it to regulate door-to-door canvassing. *See Watchtower*, 536 U.S. at 164-65. It should go without saying that protection of young children from crime (including potential sex offenders), being taken advantage of, or from being harmed in any way are interests of the highest order. Common sense and settled legal authority addressing time, place, and manner restrictions render the face of the Ordinance impervious to Plaintiffs' challenges. *See Association of Community Organizations*, 453 F. Supp. 2d at 414 (stating that the town did not need to provide specific evidence or statistics to support its purported interests in regulating door-to-door solicitation, as "it is common knowledge" that crime occurs during solicitation, and it would make no sense to wait for harm to occur before passing a regulation) (citation omitted).

Furthermore, no fundamental rights are being violated by the existence of this Ordinance on its face. As part of their equal protection claim, Plaintiffs also allege that "[t]he Ordinance employs a suspect classification – race," and disparately treats individuals based on race. [Doc. 2, pg. 6] There is absolutely no support for this allegation, and certainly no support for it on the face of the Ordinance. This Court

---

Ordinance. The Court should not be put in the position of having to decide which alternative would best protect Jacksonville's children when the City decided more than two decades ago that the best protection is to require adult supervision of children doing door-to-door.

11

recognized as much in its previous Order, ruling that the Ordinance is "rationally related to the City's legitimate purpose of protecting children." [Doc. 16, *Order,* pg. 31]

As this Court correctly reasoned, the case law cited above establishes the clear and unmistakable substantial interests involved in regulating door-to-door solicitation and peddling by children. [Doc. 16, *Order,* pg. 18] The Court need look no further than the face of the Ordinance to see those safety interests being furthered on a daily basis, and certainly they would not be furthered if no such protections existed. This is all the Court need consider in deciding that Section 250.707 suffers from no constitutional infirmary.

The Court made this proper conclusion when it stated that "based on the face of the Ordinance, and relying upon common sense and logic," the Ordinance protects children by requiring adult supervision, and it protects them from dangerous persons, vehicles on the streets, and from the abuses of child labor. [Doc. 16, pg. 19] The Ordinance therefore has its intended effect and is constitutional on its face. *See Sciarrino*, 83 F.3d at 369 (holding that "direct advancement of even one substantial interest is sufficient to preserve a statute.")

The Ordinance has been the law in the City for 22 years. It is not content-based, does not prohibit soliciting or peddling, and does not curtail Plaintiffs' free speech rights. It only regulates activity, regardless of content, being performed door-to-door by minors. It therefore reasonably advances the City's objective of advancing the safety of children. *See Borgner*, 284 F.3d at 1213. Moreover, it leaves plenty of alternative channels open for commercial solicitation and peddling; nothing therein prohibits YOA or any other group from soliciting or peddling, even with children involved. [Doc 16, pg. 22] As such, the Ordinance has no "chilling effect" on free speech or association.

While the Ordinance does implicate expression, it "is not directed at penalizing speech itself, but rather incidentally impacts upon the youths' solicitation and peddling activities." [Doc. 16, pg. 25][9] Children are still fee to solicit and peddle, parents can still raise their children as they wish, and YOA can still recruit members and conduct its activities. [Doc. 16, pgs. 28-29][10] Under these circumstances, whatever minimal incidental burden there may be on any constitutional right does not invalidate this critical Ordinance on its face.

The City has no higher obligation than providing for the safety of its citizens, and it has long been recognized that cities have a significant interest in maintaining their police power. The Ordinance protects the safety of children when peddling or soliciting for any organization. Conversely, the Ordinance does not concern the content of speech, does not ban or even substantially limit the ability of YOA to carry out its purportedly "unique method" of operations, and certainly does not unconstitutionally impair Plaintiffs' parental or associational rights. Accordingly, the Complaint should be dismissed.

## Conclusion

Based on the foregoing, the City respectfully requests that this Court enter an order granting this motion, dismissing Plaintiffs' Complaint (Doc. 1), and granting to the City all additional relief which the Court deems just and appropriate.

---

[9] The Court concluded that even if lesser restrictions would potentially advance the same objectives, the Ordinance is narrowly tailored to protect children. [Doc. 16, pgs. 21-22, 26, 28-29]

[10] The Court concluded that the Ordinance does not on its face burden any fundamental parental right, as parents remain free to entrust their children to join YOA. The Ordinance simply regulates organizations such as YOA that wish to use children as part of their business model; it does not trigger some substantive due process claim by unduly burdening a fundamental right. [Doc. 16, *Order*, pgs. 28-29] Plaintiffs' attempted substantive due process claim should be dismissed.

Respectfully submitted by:

*/s/* Craig D. Feiser
Craig D. Feiser
Assistant General Counsel
Florida Bar No. 164593
William W. Deem
Assistant General Counsel
Florida Bar No. 512834
David J. D'Agata
Chief of Commercial Litigation
Florida Bar No. 663891
dagata@coj.net
wdeem@coj.net
cfeiser@coj.net
Office of General Counsel
117 West Duval Street, Suite 480
Jacksonville, FL 32202
(904) 630-1700-Telephone
(904) 63-1316-Facsimile
*Counsel for Defendant, City of Jacksonville*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 2nd day of June, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notices of the electronic filing to William J. Sheppard, Sheppard, White, Kachergus & DeMaggio, P.A., 215 Washington Street, Jacksonville, FL 32202, sheplaw@att.net and Robert L. Corse, 233 E. Bay Street, Suite 920, Jacksonville, FL 32202, Robert@robertcorselaw.com.

*/s/* Craig D. Feiser
*Assistant General Counsel*